UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WHITNEY KURLAN,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 3:18-cv-00062 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

In this appeal from the Social Security Commission's denial of benefits, plaintiff Whitney Kurlan argues that the Administrative Law Judge (ALJ) erred because (1) his evaluation of her residual functional capacity (RFC) was not supported by substantial evidence; (2) he failed to properly weigh the opinion of her treating spine surgeon; (3) he failed to develop the record by ordering a consultative medical examination; and (4) he failed to give appropriate weight to her testimony about her pain symptoms. Ms. Kurlan also argues that the Appeals Council erred in declining to consider new post-hearing evidence. I agree with Ms. Kurlan's first argument and grant her motion to remand the case to the Commissioner.

    I assume familiarity with Ms. Kurlan's medical history (summarized in a stipulation of facts filed by the parties, ECF No. 16, which I adopt and incorporate herein by reference), the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision pursuant to ...42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## DISCUSSION

### I.     The ALJ's RFC Formulation Was Not Supported by Substantial Evidence

Ms. Kurland argues that the ALJ's RFC formulation was not supported by substantial evidence. Specifically, she asserts that, because the ALJ declined to give weight to any medical sources in the record, he "substituted his own opinion for that of competent medical authority." (ECF No. 17-1 at 12.) I agree.

### a. The ALJ Rejected All of the Medical Opinions in the Record

It is well established that "an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Staggers v. Colvin*, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (internal quotation marks and citations omitted). "The social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (internal quotation marks and alterations omitted). Thus, where the record does not contain relevant medical opinion evidence, an ALJ has an "affirmative duty to request RFC assessments from a plaintiff's treating sources." *Felder v. Astrue*, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012).

An ALJ's failure to request RFC assessments may be harmless, and thus no remand warranted, in cases where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Commr. Soc. Sec.*, 521 Fed. App'x 29, 34 (2d Cir. 2013). For example, the Second Circuit held that remand was not necessary when "the ALJ had a number of functional assessments from a treating source," although the record contained no formal RFC assessments. *Id.* Similarly, remand may be unnecessary where the ALJ rejects the medical opinion evidence in the record but the RFC formulation is supported by substantial evidence in "contemporaneous treatment notes." *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8–9 (2d Cir. 2017). In short, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source." *Staggers v. Colvin*, No. 3:14-CV-717 JCH, 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015).

3

Here, the ALJ determined that Ms. Kurlan had "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she is limited to only occasional climbing, balancing, stooping, kneeling, couching, and crawling; to never climbing ladders, ropes, and scaffolds; to needing to be able to avoid concentrated exposure to vibrations or hazards; and she needs to be able to change position as needed in the work area during the workday from sitting to standing or standing to sitting."[1] R. 43.

In formulating this RFC, the ALJ gave little or no weight to the medical opinions in the record. First, he assigned "little weight" to Ms. Kurlan's post-surgery discharge instructions, which indicated that she could sit for only 20 to 30 minutes, could not drive, could not bend or twist at the waist, and could not lift more than 10 to 15 pounds. R. 46 (summarizing R. 507). He explained that the instructions appeared "to be the result of the claimant's surgery and not an indication of claimant's ongoing functional abilities." *Id.*

Second, the ALJ gave "little weight" to the opinion of Ms. Kurlan's treating surgeon, Dr. Mitchell Garden. R. 47. In a letter dated April 18, 2016, Dr. Garden reviewed Ms. Kurlan's treatment history and symptoms, including the two spine surgeries that he performed. R. 608–11. He opined that her "permanent partial impairment" rating was "23% whole body impairment and a 31% impairment related to the lumbar spine itself." R. 611. He noted that she would not be able to return "to her previous occupation in sales which required significant driving . . . ." *Id.* He further opined that she was limited to "less than sedentary work which would require frequent breaks as well as the ability to change positions as needed and more than likely require her to be out of work

---

[1] Under the regulations, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

frequently." *Id.* The ALJ explained that Dr. Garden's opinion was "inconsistent with the record as a whole" and that the limitations he described "appear[ed] to be based upon the claimant's complaints rather than his own objective findings or assessment of the claimant's maximum residual functional capacity . . . ." R. 47.

Third, the ALJ assigned "no weight" to the opinions of state agency medical consultants. *Id.* He explained that the medical consultants' opinions predated Ms. Kurlan's amended alleged onset date. *Id.* Thus, the medical consultants could not offer an opinion on Ms. Kurlan's condition during the relevant period.

Finally, the ALJ assigned "no weight" to the "working from home" notice by Dr. Michael Miranda. Dr. Miranda's letter, dated January 23, 2013, noted that he found no evidence of a pelvic fracture in Ms. Kurlan's physical exam or imaging results and opined that Ms. Kurlan could "return to working from home." R. 557. The ALJ explained that the opinion did not provide a functional assessment of Ms. Kurlan's abilities and pre-dated her amended alleged onset date. R. 47.

Ultimately, the ALJ concluded that none of the medical opinion evidence provided a functional assessment based on objective medical evidence. Indeed, three of the five medical sources the ALJ considered pre-dated Ms. Kurlan's amended alleged onset date. Even the most detailed opinion, that of Dr. Garden, provided only a narrative summary of Ms. Kurlan's treatment and a functional assessment that the ALJ concluded was based only on Ms. Kurlan's self-report. R. 47; R. 611. Further, it appears that Dr. Garden was asked to offer an opinion on Ms. Kurlan's "permanent partial impairment." R. 611. Permanent partial impairment is a standard in workers' compensation claims. *See* Conn. Gen. Stat. § 31-308. The definition of disability under Connecticut's worker compensation law differs from the definition of disability under the Social Security Act. *Compare* Conn. Gen. Stat. § 31-308 (explaining how workers compensation benefits

5

are calculated for "partial incapacity," including partial payment when a claimant is able to return to work), *with* R. 40 (explaining that disability under the Social Security Act is "defined as the inability to engage in *any* substantial gainful activity . . . for a continuous period of not less than 12 months") (emphasis added); *see also Karabinas v. Colvin*, 16 F. Supp. 3d 206, 217 (W.D.N.Y. 2014) ("Dr. Kosmicki also stated that Plaintiff had a moderate permanent partial disability. These terms are used in connection with determining disability under New York State's Workers Compensation Law. And, as the ALJ noted, the definition of disability under the Workers Compensation Law is different than that under the Social Security Act."). Because he gave little to no weight to all of the medical opinions, however, the ALJ had a duty to develop the record and obtain relevant medical opinions before making the RFC assessment.

### b. The ALJ's RFC Formulation Was Not Otherwise Supported by Substantial Evidence

The Commissioner argues that, notwithstanding the lack of relevant medical opinions in the record, the ALJ's RFC assessment was supported by substantial evidence. The Second Circuit has upheld an ALJ's RFC determination where "there was no competent medical opinion that supported" the ALJ's conclusions, but "the record contain[ed] sufficient evidence from which [the] ALJ [could] assess the claimant's residual functional capacity." *Monroe*, 676 Fed. App'x at 8 (alterations omitted). In *Monroe*, the ALJ had declined to give controlling weight to the assessment of a treating psychiatrist who opined that the claimant "had little ability to deal with stress or the public and was limited in behaving in a stable manner in social situations." *Id.* at 7–8. The ALJ reviewed the psychiatrist's contemporaneous treatment notes, which indicated that the claimant "loved life," her mood was consistently "'stable' or 'good,'" and she had "engaged in a range of recreational activities . . . including snowmobiling trips to Ontario and Quebec, horseback riding,

6

four-wheeling, and multiple vacation cruises." *Id.* The ALJ thus determined that the claimant had the capacity to "perform a full range of work at all exertional levels." *Id.* at 1. The court concluded that the psychiatrist's treatment notes provided substantial evidence in support of the ALJ's conclusion.

Unlike in *Monroe*, the ALJ here formulated an RFC without the support of specific functional information in the clinical notes. *See* R. 43. First, the ALJ noted that Ms. Kurlan was recently found to "have a restriction in range of motion in the lumbar spine" but "still had full motor strength, negative leg raises, a normal gait, no clonus, and normal sensation." *Id.* The ALJ concluded that these findings "demonstrate[d] that her functional abilities were generally intact after surgery." *Id.* But "full motor strength," "normal gait," and the like do not necessarily equate to "intact . . . functional abilities" of the specific nature detailed in the RFC formulation—at least not without a supporting medical opinion that says so. Indeed, Ms. Kurlan previously had similar results from a physical exam and Dr. Garden nevertheless concluded that her pain symptoms warranted additional spine surgery. *See* R. 609 (describing Ms. Kurlan's symptoms including "decreased range of motion due to pain" and "5/5 motor strength" shortly before recommending a second spine surgery). It is not clear that Ms. Kurlan's motor strength, normal gait, lack of clonus, and normal sensation preclude the possibility that her back pain was severe enough to produce the limitations she alleged. Further, it is unclear how this evidence instead supports the ALJ's conclusion that Ms. Kurlan could "perform sedentary work" but only occasionally "climb[], balance[], stoop[], kneel,[] c[r]ouch[], and crawl[]." R. 43. The clinical notes cited in the ALJ's decision do not provide a basis for the details included in his RFC assessment. Finally, if the ALJ found Ms. Kurlan had overstated the severity of her pain, he should have ordered a consultative examination rather than relying exclusively on his own interpretation of the medical record.

7

*Tankisi*, 521 Fed. App'x. at 32. ("It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision.")

Second, the ALJ rejected Ms. Kurlan's testimony about the side effects of her medications because the side effects she described were not documented in her treatment records. R. 46. But the record contains treatment notes only from orthopedic and pain specialists. The physical examinations described in the notes were often limited to a review of her lumbar spine. *See* R. 539, 536, 533, 530. It appears that Ms. Kurlan was also seeing a primary care physician and a psychotherapist during the relevant period. *See* R. 241 (listing an appointment with Dr. Kelli Watkins-Colwell of "Primed" on April 15, 2015); R. 260 (listing Dr. Carine Jean as a psychotherapist who prescribed Vyvanse for focus, concentration, motivation, and depression). There do not appear to be records of her visits with either physician, and neither party has cited any. On this incomplete record, the absence of documented complaints about medication side effects does not support a definitive inference that Ms. Kurlan did not experience the side effects she alleged.

Finally, the ALJ determined that Ms. Kurlan's activities of daily living "suggest[ed] functional abilities in excess of those alleged." R. 46. In particular, he cited Ms. Kurlan's statements that she could "feed pets, cook multi-course meals, generally engage in personal care with some assistance, clean counters, engage in some vacuuming, folding clothing, loading clothing in the washer if it is waist high, drive a car for short distances, go on a daily walk with her dogs, and go shopping in stores for groceries." R. 46. Ms. Kurlan testified that her pain "fluctuates from extreme to bad," and she functions best when she has no set schedule. R. 67, 75. She also testified that her partner did most of the grocery shopping, driving, and cooking. R. 62–63. Although she helps walk her dogs, she cannot do so on her own. *See* R. 212–13. Overall, Ms.

Kurlan's limited ability to complete day-to-day activities on her own sporadic schedule and with assistance does not contradict her reports of pain or suggest functional abilities in excess of those alleged.

**II.     Reevaluation on Remand**

Remand for further development of the evidence is warranted. *Hallet* at *7 ("Where the ALJ fails to fulfill the duty to develop the record, the reviewing district court should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence."); *Jermyn v. Colvin*, 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("On remand, the ALJ is directed to develop the record as it relates to Plaintiff's physical impairment by obtaining RFC assessments from medical sources, including Plaintiff's treating physicians."). On remand, the ALJ shall develop the record by requesting a medical source statement or other assessment of functional limitations from a treating or consulting physician. The ALJ should consider any treating source opinion in light of the factors set forth in *Greek v. Colvin*, 802 F.3d 370 (2d Cir. 2015) ("To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.") (quotation marks and alterations omitted).

The ALJ assessed Ms. Kurlan's residual functional capacity and evaluated her testimony without the benefit of any opinion on which he was willing to rely from a treating physician or consultative examiner. His assessments may change in light of the additional evidence. As a result, on remand, the ALJ is directed to reconsider the weight afforded to the existing medical sources as well as his assessment of Ms. Kurlan's testimony regarding the severity of her symptoms.

## **CONCLUSION**

The ALJ formulated Ms. Kurlan's RFC without relying on any relevant medical opinion in the record, and his RFC assessment is not supported by substantial evidence. Accordingly, Ms. Kurlan's motion, ECF No. 17, is GRANTED in part and DENIED in part and the Commissioner's motion, ECF No. 19, is DENIED. The case is hereby REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
February 28, 2019